# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 9, 2018          Decided May 4, 2018

No. 16-1311

STAFFCO OF BROOKLYN, LLC,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

NEW YORK STATE NURSES ASSOCIATION,
INTERVENOR

———

Consolidated with 16-1363

———

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

———

*Nicholas M. Reiter* argued the cause for petitioner. With him on the briefs was *Benjamin E. Stockman*. *Moxila A. Upadhyaya* entered an appearance.

*Jared D. Cantor*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Richard F. Griffin*, General Counsel at the time the brief was submitted, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Kira Dellinger Vol*, Supervisory Attorney.

*Richard M. Seltzer* argued the cause for intervenor. With him on the brief was *Kate M. Swearengen*.

Before: PILLARD and WILKINS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: StaffCo of Brooklyn, LLC ("StaffCo"), petitions for review of a National Labor Relations Board ("NLRB" or "the Board") order finding that StaffCo violated section 8(a)(5) and (1) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158(a)(5) and (1), by unilaterally discontinuing contributions to a Union pension plan upon the expiration of a collective bargaining agreement ("CBA"). StaffCo contends that: (1) the Union expressly waived its right to bargain as to pension contributions; (2) the Union impliedly waived its right to bargain by failing to diligently request bargaining; and (3) it was impossible for StaffCo to continue making contributions because the pension plan would not have accepted the payments. Because we reject these defenses and the Board's findings are supported by substantial evidence on the record, we deny StaffCo's petition for review and grant the Board's cross-application for enforcement.

## I.  Background

### A.  Factual Background

The State University of New York Downstate Medical Center ("SUNY Downstate") contracted with StaffCo to provide non-physician staff at Long Island College Hospital. StaffCo hired nurses and nurse practitioners to staff the Hospital and nearby school clinics run by the Hospital. Intervenor New York State Nurses Association represents the employees as collective bargaining agents and entered into a CBA effective May 29, 2011, through May 28, 2012.

Under the CBA, StaffCo agreed to participate in the Union's pension plan and contribute to it. StaffCo and the Union also agreed to be bound by the terms and provisions of the plan as set out in its Agreement and Declaration of Trust. The admission requirements of the plan dictate that the CBA of an admitted employer must not be inconsistent with the plan itself or its trust agreement. The plan documents include a Policy for Continuation of Coverage Upon Expiration of a Collective Bargaining Agreement ("the Policy"). The Policy sets the conditions on which Plan coverage would continue if a CBA or interim agreement expired. The relevant portion of the Policy states:

> Upon expiration or termination of a collective bargaining agreement, if (i) the employer has not submitted to the Plan Office a new [CBA] which satisfies the requirements of (A) above [for new CBAs] and has not complied with the provisions of (B)(1) above [governing continuation of coverage], or (ii) the employer owes contributions to the Fund for more than two months (without regard to when such

contributions are payable), the employer's participation in and status as an Employer under the Fund shall forthwith terminate, the service of such employer's employees shall no longer be credited under the Plan, the employer and the Association, shall be notified in writing, and the employees of the employer shall be notified in writing five business days thereafter, that the employer is no longer maintaining the Plan and that the covered employment of the employees of the employer terminated on the expiration/termination date of the [CBA].

After expiration of the initial CBA, the parties signed three extensions and two interim agreements ensuring continuation of pension coverage. The last extension was signed on March 13, 2014, and would expire on May 22, 2014. May 22 was significant because the Hospital was to shut down after that date. That date was also significant because StaffCo would face additional pension liability if it remained in the plan beyond May 22.

SUNY Downstate faced serious financial difficulties as early as 2012. SUNY Downstate's trustees voted to close the Hospital in February 2013, but that closure was repeatedly delayed by litigation involving the Union and other community and labor groups. In February 2014 a settlement was reached that kept the Hospital open through at least May 22, 2014. However, StaffCo continued to employ Union unit members at the Hospital until October 31, 2014—when it closed—and continued to employ four unit employees beyond that date in school clinics. After May 22, 2014, StaffCo neither submitted pension contributions to the Plan nor otherwise made pension contributions for unit employees.

## B. Proceedings Below

The Union filed an unfair labor practice charge with the NLRB on August 5, 2014, alleging that StaffCo failed to make payments to the pension plan. StaffCo did not deny that it had ceased making pension contributions. It raised a number of affirmative defenses, three of which form the basis for StaffCo's petition for review. StaffCo first asserted that the Union waived its right to bargain by accepting the adoption in the CBA of the Policy language quoted above. Second, StaffCo argued that the Union received notice of the unilateral change StaffCo planned to make but had failed to timely demand bargaining on the issue, waiving its right to bargain. Finally, StaffCo raised an impossibility defense, arguing that it could not continue to make pension contributions because the plan would not accept contributions absent a CBA or interim agreement. First an administrative law judge and then a panel of the Board resolved all issues against StaffCo.

The administrative law judge found that the Union had not in the Policy clearly and unmistakably waived its right to bargain, made credibility determinations in favor of Union witnesses, found that StaffCo failed to give the Union notice of the impending unilateral change in pension contributions and that the Union had timely demanded bargaining, and found that StaffCo failed to carry its burden on its impossibility defense. A divided Board panel affirmed the ALJ's findings and conclusions. 364 NLRB No. 102 at 1 (2016). StaffCo petitioned this court for review; the Board cross-petitioned for enforcement; and the Union obtained leave to intervene on behalf of the Board.

## II.    Discussion

Under the Act, an employer has a duty to bargain collectively with a union representing employees.  29 U.S.C. § 158(a)(5).  Any unilateral change in an existing term or condition of employment that is a mandatory subject of bargaining is an unfair labor practice.  *NLRB v. Katz*, 369 U.S. 736, 743, 747 (1962).  This rule continues to apply when a CBA expires.  *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 198 (1991).  Thus, obligatory terms and conditions of employment must be maintained while a new agreement is negotiated, and this duty to maintain the status quo is statutory rather than contractual.  *Id.* at 198, 206-07.  Only a new CBA or a good-faith impasse in negotiations ends this duty, unless the union waives its right to bargain.  *Triple A Fire Prot., Inc.*, 315 NLRB 409, 414 (1994).  A union may expressly waive its right to bargain by a waiver that is "clear and unmistakable" or may implicitly waive by failing to timely demand bargaining.  *Regal Cinemas, Inc. v. NLRB*, 317 F.3d 300, 312, 314 (D.C. Cir. 2003).

StaffCo does not deny that by failing to make pension contributions, it failed to meet its status quo obligations.  Therefore, we address the three affirmative defenses raised.

### A.  Express Waiver of the Right to Bargain

We first consider whether the Union waived its right to bargain as to pension contributions by accepting the terms of the Policy.  We do not defer to NLRB's legal conclusions interpreting labor agreements.  *NLRB v. U.S. Postal Serv.*, 8 F.3d 832, 837 (D.C. Cir. 1993).  We do, however, defer to NLRB fact-finding if supported by substantial evidence.  *See Oak Harbor Freight Lines, Inc. v. NLRB*, 855 F.3d 436, 440 (D.C. Cir. 2017).  Our deference to NLRB fact-finding extends

to findings related to the contract, including evidence of intent from "bargaining history," *Local Union No. 47, Int'l Bhd. of Elec. Workers v. NLRB*, 927 F.2d 635, 640 (D.C. Cir. 1991), and other "factual findings on matters bearing on the intent of the parties," *Local Union 1395, Int'l Bhd. of Elec. Workers v. NLRB*, 797 F.2d 1027, 1030 (D.C. Cir. 1986).

The Board and courts have long held that to be effective, a union's express waiver of a statutory right "must be clear and unmistakable." *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983). In other words, "we will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.'" *Id.* Moreover, under our precedent "the party claiming waiver . . . ha[s] the burden of proof." *Oak Harbor*, 855 F.3d at 442. Although this circuit has held that in many cases an antecedent question of contract coverage must be answered before addressing whether clear and unmistakable waiver has occurred, *see generally U.S. Postal Serv.*, 8 F.3d at 836-37, StaffCo does not contend that those precedents govern these facts.

The Policy states that StaffCo's "participation in and status as an Employer" under the plan would "terminate" at CBA expiration, that StaffCo would "no longer maintain[] the Plan," and that employees' service "shall no longer be credited under the Plan." Therefore, StaffCo contends the Policy effects a waiver of the Union's right to bargain over pension contributions. StaffCo argues that we recently addressed similar language in a pension plan document in *Oak Harbor Freight Lines v. NLRB* and found a waiver of the right to bargain. 855 F.3d at 439, 441-42. However, the pension plan language in *Oak Harbor* is distinguishable.

In *Oak Harbor*, the relevant pension fund document expressly gave the employer the right to unilaterally cease making payments to the pension plan:

> Upon expiration of the current or any subsequent bargaining agreement requiring contributions, the employer agrees to continue to contribute to the trust in the same manner and amount as required in the most recent expired bargaining agreement until such time as the [employer or union] either notifies the other party in writing . . . *of its intent to cancel such obligation* five days after receipt of notice or enter[s] into a successor bargaining agreement.

*Id.* at 439 (emphasis added). This language expressly grants the employer the right to cease making payments without violating its status quo obligations to the Union, and to do so unilaterally—the employer must continue making payments "until" either it or the union "notifies the other party in writing . . . of its intent to cancel such obligation." *Id.* In short, the employer in *Oak Harbor* could "cancel [its] obligation." *Id.* The language in this case is not so clear and unmistakable.

StaffCo points to no language in the Policy that expressly provides it with a unilateral right to cease making pension contributions. To conclude from the Policy language that StaffCo can unilaterally cease making contributions depends on an inference. That StaffCo's "participation in and status as an Employer . . . terminate[s]," that employee service "shall no longer be credited," and that StaffCo will "no longer maintain[] the plan" upon expiration of a CBA or interim agreement do not expressly grant a right to end contributions—all require a further inference. The end of StaffCo's "participation" in or "maintenance" of the plan does not necessarily require such an

inference. Rather, as the Board found, the Policy language could be read to clarify StaffCo's position as to the pension plan, not with regard to the Union, and therefore the Policy lacks the clarity needed to waive the Union's right to bargain about the pension contributions. Under the clear and unmistakable waiver rule, which places the burden on StaffCo, the Policy language falls short of establishing waiver.

StaffCo argues that the Board improperly distinguished its own precedent in *Cauthorne Trucking*, 256 NLRB 721 (1981), where the Board found waiver of the right to bargain. Like *Oak Harbor*, however, *Cauthorne* is distinguishable from this case. *Cauthorne*'s pension document clearly stated that "any [Employer's] obligation . . . shall terminate" at CBA expiration. 256 NLRB at 722. Moreover, the Board's finding of no waiver in this case accords with its practice of "appl[ying] *Cauthorne* . . . 'narrowly,'" only finding waiver "where there is explicit contract language authorizing an employer to cancel its obligations." *Oak Harbor*, 855 F.3d at 441-42 (quoting *The Finley Hosp.*, 359 NLRB 156, 159 n.5 (2012)). The Board properly distinguished *Cauthorne*.

StaffCo also attempts to rely on evidence of the parties' past practices to bolster its case that the Union waived its right to bargain. Specifically, StaffCo points to (1) the Union's quickly moving to have four different interim or extension agreements approved and (2) testimony by Union witnesses and other evidence that StaffCo claims show the Union understood an extension was necessary to ensure pension contributions continued.

The portions of the record StaffCo relies upon do not unambiguously show that the Union understood that interim agreements were necessary for contributions to continue, much less that the Union understood the Policy to waive its right to

bargain. That the Union moved quickly to ensure CBA extensions were in place shows at most that it had some concern that motivated it to act, not that ensuring pension contributions was its concern. One Union witness, Michelle Green, did state that the Union was anxious to get an extension of the CBA because "we wanted to make sure that the Pension Fund contributions would continue from – – that the Pension Fund would accept contributions from the Employer." This statement itself is not crystalline, and in an email Green stated that the reason to pursue an interim agreement is "to continue the pension benefit." The Board considered this evidence and resolved any conflict against StaffCo. Even though the record is not unambiguous, substantial evidence supports that finding.

### B. Implied Waiver By Failure to Timely Demand Bargaining

We next consider petitioner's argument that the Board erred by "never consider[ing] StaffCo's alternative argument that the Union's failure to diligently request bargaining about pension benefits waived the status quo obligation." As with the first argument, petitioner is able to find some support in the record and our precedents, but also as with the first argument, it is insufficient for us to upset the findings and conclusions of the Board.

Substantively, petitioner relies on well-established principles of labor law. As we have held, "[i]f an employer gives a union advance notice of its intention to make a change to a term or condition of employment, 'it is incumbent upon the [u]nion to act with due diligence in requesting bargaining.'" *Regal Cinemas*, 317 F.3d at 314 (quoting *Golden Bay Freight Lines*, 267 NLRB 1073, 1080 (1983)). Failure to demand bargaining after receiving notice of a planned unilateral change waives the Union's right to bargain. *See id.* While "[t]he

burden is on the union to make its desires known," it need not "explicitly demand bargaining." *Prime Serv., Inc. v. NLRB*, 266 F.3d 1233, 1238 (D.C. Cir. 2001). That is, "[a] union need utter no particular words," and "[t]he demand may be in writing or it may be oral," but "some indicia of a demand" must be provided. *Id.*

StaffCo argues that unrebutted evidence in the record establishes that it provided notice to the Union and the Union then failed to timely demand bargaining. We address only whether the Union timely requested bargaining. Because the Board's determination that it did is supported by substantial evidence, we cannot find fault with the Board's ultimate finding that the Union did not impliedly waive its right to bargain.

While StaffCo argues that the Board ignored this argument, and that the Board made no explicit findings as to which the deferential standard of review can be applied, we disagree. The ALJ made explicit findings and recited relevant evidence and specifically rejected the argument. The Board expressly "affirm[ed] the judge's rulings, findings, and conclusions" without excluding the portion of it dealing with this subject. We grant that the judge's findings were terse, but tolerably so. We further grant that the Board's performance on this issue may be the bare minimum warranting deference, but it does reach the bare minimum.

Significant for our review, the ALJ found credible the testimony of Union witnesses "that the Union was seeking an extension to the [CBA] since May 20 and repeatedly requested that [StaffCo] continue with its pension contributions." The testimony credited included evidence that Eric Smith, a Union official, at a May 20 labor-management meeting attended by StaffCo's CEO and an Assistant Vice President for Human

Resources had requested that StaffCo remain current on its pension obligations and sign a new extension of the CBA to cover employees who would remain at LICH beyond the May 22 layoffs. The Board majority adopted this finding after "carefully examin[ing] the record and find[ing] no basis for reversing the [credibility] findings."

"The court will not overturn the Board's acceptance of an ALJ's resolution of conflicting testimony unless the ALJ's determinations are 'hopelessly incredible' or 'self-contradictory.'" *Citizens Inv. Servs. Corp. v. NLRB*, 430 F.3d 1195, 1198 (D.C. Cir. 2005) (quoting *Teamsters Local Union No. 171 v. NLRB*, 863 F.2d 946, 953 (D.C. Cir. 1988)). The arguments offered by StaffCo do not reach this stringent standard. Substantial evidence on the record supports the Board's finding that the Union timely demanded bargaining.

## C. Impossibility

StaffCo's final argument raises the affirmative defense of impossibility. StaffCo argues that the pension plan would have rejected any status quo payments made after expiration of the CBA. The Board rejected this argument, finding that StaffCo had failed to meet its burden of showing that the plan would have refused payment. We agree. StaffCo's arguments are not without convincing force. The gist of the relevant portion of the plan set out above is that employers with terminated CBAs should not expect to continue membership in the plan. However, the record still falls short of establishing factual impossibility on this issue where StaffCo bears the burden. There is no evidence that StaffCo tendered payments and was refused. There is no evidence that StaffCo attempted a substitute compliance by some means such as the establishment of an escrow. *Cf. Clear Pine Mouldings*, 238 NLRB 69, 80 (1978) (no violation where the employer "had only deposited

the money in a bank account for disposition upon bargaining [and] could do little else for the trust would not take it"). Given the standard of review, we do not upset the Board's "'reasonably defensible' interpretation of the facts." *W & M Props. of Conn., Inc. v. NLRB*, 514 F.3d 1341, 1348 (D.C. Cir. 2008) (quoting *Traction Wholesale Ctr. Co. v. NLRB*, 216 F.3d 92, 99 (D.C. Cir. 2000)).

**III.     Conclusion**

For the foregoing reasons, we deny StaffCo's petition for review and grant the Board's cross-application to enforce its order.